United States District Court
Southern District of Texas
FILED

DEC 2 0 2004

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DORA LUZ SAUCEDA | § | |
| | § | Civil Action No.  B-04-049 |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of the | § | |
| Social Security Administration | § | |
| | § | |
| Defendant | § | |

**PLAINTIFF'S OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**INTRODUCTION**

The plaintiff files these Objections the Magistrate Judge's Report and Recommendation ("Magistrate's Report") pursuant to Rule 72(b) of the Federal Rules of Civil Procedure.

The plaintiff sought judicial review of an adverse administrative decision denying entitlement to social security disability benefits (42 USC 405(g)).

Magistrate Judge Felix Recio entered the Report and Recommendation on December 14, 2004, and advised the parties to file objections within ten (10) days after its receipt.  The ruling recommends judgment in favor of the Commissioner on ground that the plaintiff's representative had the duty to bring findings of the State agency reviewing physician to the attention of the vocational expert [citing Bowling v. Shalala, 36 F.3d 431 (5th Cir. 1994)], the ALJ did not rely exclusively on the PRTF in deciding her mental limitations, the ALJ's decision is supported by substantial evidence, and the plaintiff demonstrated no prejudice from failure to develop the record.

Upon timely-filed objections, the Court must make a *de novo* determination of the objectionable portions of the Magistrate Judge's recommendations or findings (Rule 72(b) F. R. Civ. P. and 28 USC 636(b)(1)).

## PLAINTIFF'S OBJECTIONS

## PRELIMINARY STATEMENT

Aided by the *post hoc* arguments of the Commissioner's appellate counsel, the Magistrate's Report simply repeats the evidence contained in the record and the findings of the ALJ. Merely repeating what the ALJ concluded does not establish that the conclusion is consistent with applicable legal standards or supported by substantial evidence. It is like saying, "The moon is round and appears to have holes; therefore, it is obviously made of Swiss cheese." The undersigned attorney does not file federal appeals that are frivolous so that they need a statement of what the ALJ obviously concluded. Accordingly, the plaintiff objects to the Magistrate's Report in its entirety and requests that the Court review the arguments in the plaintiff brief in support of judicial review, set forth herein, *de novo*.

## STATEMENT OF THE ISSUE

Whether the finding that the plaintiff can do the full range of sedentary work is supported by substantial evidence when the administrative law judge agreed with the State agency physician's opinion that her mental impairment is a severe impairment yet made no assessment of her mental limitations.

## STATEMENT OF THE CASE

### Administrative Proceedings and Disposition

An administrative law judge ("ALJ") held a hearing on the denial of the plaintiff's claim for disability benefits under the Social Security Act ("Act") on June 5, 2003, in Harlingen, Texas. [TR 19-35]. In the decision issued on September 26, 2003, the ALJ found that the plaintiff had slight residual deficiency from a cerebral infarction ("stroke") as a severe impairment; concurred with the State agency assessment of her mental impairment which indicated she had work-related mental limitations; found that she can do the full range of sedentary work, that she has no past relevant work, but she can do unskilled sedentary jobs administratively noticed by direct application of rule 201.27 of the medical-vocational guidelines. [TR 9-18]. The Appeals Council denied the request for review of this decision on January 23, 2004. [TR5-6]. The plaintiff has exhausted all administrative remedies and filed a timely request for judicial review.

### Plaintiff's Application, Background, and Allegations

The plaintiff filed an application for disability benefits under title XVI of the Act on October 31, 2001, alleging an in ability to work because of left-sided weakness from a "stroke." She was 45 years old at the time of the hearing, completed the equivalency of the twelfth grade of school, and has no past relevant work experience. [TR 22-24, 73-76, 84-93]. She testified that she has been taking medication for depression since having the stroke in October 2001. [TR 26].

### Medical Evidence and Opinion

John Reeder, M.D., a consulting examiner, diagnosed the plaintiff with possible residual deficiency from a cerebral infarction and recommended a neuropsychiatric evaluation. [TR 120-122]. Robert Collier, M.D., a consulting psychiatrist, diagnosed the plaintiff with depression

secondary to her physical illness (status-post cerebral vascular accident). [TR 157-158]. The State agency reviewing psychologist, based on the consultative psychiatric examination, completed a Psychiatric Review Technique Form indicating that her mental impairment is severe and requires an assessment of mental limitations [TR 159-172]. He also completed a form for work-related mental limitations showing that the plaintiff is "moderately limited" in the ability to understand and carry out detailed instructions, to interact with the public, to accept criticism from supervisors, and to respond appropriately to changes in the work setting. The reviewing psychologist commented that the plaintiff can "perform one or two step tasks." [TR 173-175].

## Vocational Evidence and Opinion

Jerold Hildre, a vocational expert, testified that a person who could lift only ten pounds and had a "moderate impairment in relating to other people due to depressive symptoms" could do the full range of sedentary work.. [TR 34]. The ALJ's hypothetical question did not present all of the limitations indicated by the State agency's reviewing psychologist.

## ARGUMENTS

### I

### Vocational Testimony Required

#### A

The Magistrate Judge's reference to, and reliance on, <u>Bowling</u> are mis-placed because the ALJ did not decide this case based on jobs identified by the vocational expert but on administrative notice of unskilled jobs by direct application of the medical-vocational guidelines. Although the plaintiff's representative may have a duty to present alternative limitations to a vocational expert to determine what jobs, if any, a plaintiff might be able to do, the ALJ was

essentially asking the vocational expert for an opinion that relates to her mental limitations. The finding that the plaintiff can do the full range of sedentary work is erroneous because the vocational expert is qualified only to testify to jobs that a plaintiff may be able to perform with a given residual functional capacity, not to offer an opinion about a plaintiff's residual functional capacity. [TR 34]. See: Randall v. Sullivan, 956 F. 2d 105, 107 fn 1 (5th Cir. 1992); Social Security Ruling 96-8p.

**B**

The initial burden is on the plaintiff to show that he or she has an impairment which has lasted or is expected to last at least twelve continuous months, and that the impairment prevents the plaintiff from doing past relevant work. The burden then shifts to the Commissioner at the fifth step in the sequential evaluation process to show that the plaintiff can do other work. If the Commissioner adequately demonstrates that the plaintiff can perform alternative employment, the burden then shifts back to the plaintiff to show that he or she cannot do the alternative jobs. Mays v. Bowen, 837 F. 2d 1362, 1364 (5th Cir. 1988); Fields v. Bowen, 805 F. 2d 1168, 1169-1170 (5th Cir. 1986).

The Commissioner can meet this burden by reference to the medical-vocational guidelines ("grid rules") which permit the ALJ to take administrative notice of jobs in the national economy or through the testimony of a vocational expert. When all of the medical-vocational factors of a plaintiff coincide with the underpinnings of a grid rule (residual functional capacity, age, education, and work history), then the rule *directs* a conclusion of "disabled" or "not disabled." When all of the medical-vocational factors of a plaintiff do not coincide with the underpinnings of a grid rule, then the rule can be used only in conjunction with vocational

testimony as a *framework* for determining whether a plaintiff is "disabled" or "not disabled." Each underlying grid rule factor is subject to rebuttal; however, the grid rules, when applicable, are conclusive rather than presumptive and may not be rebutted by vocational testimony. See: Cooper v. Bowen, 880 F. 2d 1152, 1157-1158 (9th Cir. 1989) [ALJ may not use vocational testimony to rebut underlying assumptions of the grid rules]. See also: Heckler v. Campbell, 103 S.Ct. 1952 (1983) [adopted as Social Security Ruling 83-46c]; 20 CFR 404.1569 and 20 CFR, Part 404, Subpart P, Appendix 2, section 200.00(a); and Social Security Rulings 83-5a and 83-10.

The medical-vocational guidelines of the regulations cannot be directly applied whenever the plaintiff's ability to do the full range of work at any given exertional level is significantly compromised by non-exertional limitations or when the guidelines do not cover all possible variations of vocational factors. The ALJ is required to obtain testimony from a vocational expert to ascertain the impact of the plaintiff's non-exertional limitations or vocational factors on his or her potential occupational base for other work. Whenever expert vocational testimony is obtained and the decision is adverse to the plaintiff, the decision must include (1) citations of examples of the jobs or occupations the plaintiff can do functionally and vocationally, and (2) a statement of the incidence of such work in the region where the plaintiff resides or in the several regions of the country (20 CFR 404.1569a and Social Security Rulings 83-14 and 85-15). Newton v. Apfel, 209 F. 3d 448, 458 (5th Cir. 2000).

## C

In this case, the State agency reviewing psychologist, based on a consultative psychiatric examination showing that the plaintiff has depression secondary to physical illness [TR 158],

completed a Psychiatric Review Technique Form indicating that her mental impairment is severe and requires an assessment of mental limitations [TR 159-172]. In the decision, the ALJ stated that he agreed with that assessment [TR 14] but nevertheless found that she can do the full ranged of sedentary work [TR 16]. The State agency psychologist completed a form for work-related mental limitations showing that the plaintiff is "moderately limited" in the ability to understand and carry out detailed instructions, to interact with the public, to accept criticism from supervisors and to respond appropriately to changes in the work setting. He commented that the plaintiff can "perform one or two step tasks." [TR 173-175].

The ALJ's finding that the plaintiff can perform the full range of sedentary unskilled work administratively noticed in the *Dictionary of Occupational Titles* is legally erroneous. The vocational expert testified that a person who could lift only ten pounds and had a "moderate impairment in relating to other people due to depressive symptoms" could do the full range of sedentary work, but the ALJ's hypothetical question did not present all of the limitations indicated by the State agency's reviewing psychologist. [TR 34]. The ALJ made no findings of fact with respect to the four mental activities generally required by competitive, remunerative, unskilled work: (1) understanding, remembering, and carrying out simple instructions; (2) making judgments that are commensurate with the functions of unskilled work — i.e. simple work-related decisions; (3) responding appropriately to supervision, coworkers and usual work situations; and (4) dealing with changes in a routine work setting (20 CFR 416.921(b)). A finding of fact must be made with respect to each of these mental activities before the ALJ can conclude that the plaintiff can do unskilled work without vocational testimony concerning job that she may be able to do. A *substantial loss of ability* to meet any *one* of these basic work-

related mental activities on a sustained basis (i.e. 8 hours a day, 5 days a week, or equivalent schedule) substantially erodes the occupational base for unskilled work and would justify a finding of disability. When an individual has a *limited ability* in *one or more* of these basic work activities, vocational testimony is required to determine the impact of the limitations on the individual's potential occupational base for unskilled work (Social Security Ruling 96-9p). See: Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997) [noting that many unskilled jobs require more than the mental capacity to follow simple instructions]; Sanders v. Sullivan, 983 F. 2d 822, 823-824 (8th Cir. 1992) [ALJ erroneously assumed, without further psychological or vocational testing and without expert vocational testimony, that work-related stress resulting from a mental disorder would be minimized in an unskilled job].

The State agency psychologist completed a form for work-related mental limitations showing that the plaintiff is "moderately limited" in the ability to understand and carry out detailed instructions, to interact with the public, to accept criticism from supervisors, and to respond appropriately to changes in the work setting. [TR 173-175]. Because of these non-exertional limitations, the ALJ was required to obtain testimony from a vocational expert to ascertain the impact of the plaintiff's non-exertional limitations on her potential occupational base for other work with (1) citations of examples of the jobs or occupations the plaintiff can do functionally and vocationally, and (2) a statement of the incidence of such work in the region where the plaintiff resides or in the several regions of the country (20 CFR 416.969a and Social Security Rulings 83-14 and 85-15). Newton v. Apfel, 209 F. 3d 448, 458 (5th Cir. 2000).

## II

### Assessment of Mental Limitations

In the zeal to uphold the Commissioner's decision based on the *post hoc* arguments of her appellate counsel, the Magistrate Judge did not take the time to understand the plaintiff's argument explaining the difference between limitations identified on the Psychiatric Review Technique Form (PRTF) used at steps 2 and 3 of the sequential evaluation process and the mental residual functional capacity assessment used at steps 4 and 5 of the process.

### A

### Psychiatric Review Technique Form

The ALJ stated that he concurred with the limitations identified on the Psychiatric Review Technique Form (PRTF), completed at the lower levels of adjudication. [TR 14]. These limitations, however, are not a residual functional capacity assessment but rather a rating of the severity of the plaintiff's mental impairment at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of various functions such as the ability to understand, carry out, and remember instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, co-workers, and work situations; and to deal with changes in a routine work setting (20 CFR 416.920a, 416.921(b) and 416.945(c) and Social Security Ruling 96-8p). Because the four areas of mental functioning identified on the PRTF do not match the basic work-related mental activities set forth in the regulations, the ALJ may not draw conclusions about the plaintiff's mental limitations from the PRTF alone. <u>Chambers v. Barnhart</u>, 2003 WL 22512073 (10th Cir. 2003) [restricting claimant to "simple tasks" is not a

conclusion that can be drawn from assessment of claimant's "concentration, persistence and pace" on PRTF]; Loza v. Apfel, 219 F.3d 378, 392 (5th Cir. 2000) [finding of a slight restriction in "activities of daily living" on PRTF does not address claimant's ability to work].

### B
### Simple Work with "One or Two Step Tasks"

The reviewing psychologist commented that the plaintiff can "perform one or two step tasks." [TR 173-175]. Although one court concluded that a hypothetical question to the vocational expert stating the claimant was capable of doing "simple, repetitive, routine work" was adequate to describe mental limitations associated with borderline intellectual functioning [Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001)], this case is limited to the situation in which the only mental impairment is a cognitive impairment (borderline intellectual functioning) rather than an emotional impairment (such as a depressive and/or anxiety disorder). Another court observed that the phrase "simple, repetitive one, two-step tasks" might refer to a variety of both physical and mental limitations: lack of motor skills; lack of initiative or creativity; lack of intelligence; or fear and unwillingness to take on unfamiliar tasks. The generic limitation fails to incorporate all of the other aspects of a mental impairment such as deficiencies in the ability to use judgment, respond appropriately to others, adapt to changes in the work setting, function independently, demonstrate reliability, or tolerate stress in the workplace. See: Burns v. Barnhart, 312 F.3d 113, 123 (3rd Cir. 2002), distinguishing Howard v. Massanari, 255 F.3d 577 (8th Cir. 2001). See also: Lucy v. Chater, 113 F.3d 905, 908-909 (8th Cir. 1997) [noting that many of the unskilled sedentary jobs listed in the *Dictionary of Occupational Titles* require more than the ability to perform simple tasks].

## III

## Remand Justification

Finally, the Magistrate Judge's discussion of the need to show prejudice when the ALJ fails to develop a full and fair records completely fails to address the plaintiff argument that the ALJ's decision is so poorly articulated that it is impossible to ascertain what, if any, evidence he actually relied upon to reach his conclusions. For that reason, his decision is not supported by substantial evidence and should be remanded.

The ALJ's decision should be more than an exercise in robotics — mechanically putting words on paper without any apparent thought given to what is being written. The decision to deny benefits must be written in "understandable language" (42 USC 405(b)). The ALJ's decision is simply a cut-and-paste patchwork of boilerplate language, and its internal inconsistency attests that little, if any, consideration was given to any kind of evidentiary basis in assessing the plaintiff's functional limitations. Other than stating that he agreed with the PRTF completed by the State agency psychologist, the ALJ failed to discuss what mental limitations the plaintiff has. If the ALJ felt that the plaintiff had no mental limitations, then he should have discussed the limitations assessed by the State agency psychologist and explained, with reference to other evidence in the record, why those limitations are invalid. Instead, the assessment of her residual functional capacity is a one-sentence conclusory statement [TR 16]:

> "According, I find that the claimant retains the residual functional capacity for the full range of sedentary work."

Accordingly *to what*? There are more than two pages of recitation of raw medical data enmeshed with testimony without any apparent point to be made. The ALJ made no attempt to articulate some rational and logical connection between the finding with respect to the plaintiff's residual

functional capacity and the evidence upon which this finding is based:

> " ... we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."

Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996).

These ALJ decisions, for the most part, are written by non-attorneys who have no idea of how to marshal relevant facts into a coherent legal opinion. They simply insert anything and everything in the medical record into a decisional format that has pre-formulated language with no attempt to relate the law to the evidence at any step in the sequential evaluation process. The decisions are mass-produced in cookie-cutter fashion on an assembly line with little, if any, quality control. The ALJ is required to provide a narrative discussion describing *how* the evidence supports each conclusion and *how* any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. Additionally, the administrative decision must always explain the consideration given to the treating source's opinion, to other medical source opinions, and to lay testimony; and the explanation must be supported by evidence in the case record and be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight given to the evidence and the reasons for that weight (Social Security Rulings 96-2p, 96-5p, 96-7p and 96-8p). When the ALJ's narrative discussion in the decision fails to meet those requirements, the deficiency may not be rehabilitated by the *post hoc* arguments in the brief of the government's appellate counsel — too often the first time there is any suggestion that an actual attorney has attempted to apply the law to the evidence in a logical and coherent written presentation. The ALJ's decision must stand or fall with the reasons set forth in the decision (or the lack thereof), as adopted by the Appeals Council, and not with *post*

*hoc* arguments presented on appeal to the federal court. Newton v. Apfel, 209 F. 3d 448, 455 (5th Cir. 2000).

The Commissioner's decision to deny benefits must be written in "understandable language" (42 USC 405(b)). When the Commissioner's decision is so poorly articulated as to prevent meaningful review, the case must be remanded. Principles of administrative law require the ALJ to articulate the grounds for the decision, and judicial review is confined to the reasons supplied by the ALJ — not those supplied by appellate counsel with *post hoc* arguments that build an accurate and logical bridge from the evidence to the conclusions reached. Mere assertions to the effect that the "record as a whole" fills the gaps in the ALJ's analysis of the evidence does not meet the requirement of the Act that the Commissioner's written decision set forth a discussion of the evidence and the reasons for the adverse decision in understandable language (42 USC 405(b)). See: Steele v. Barnhart, 290 F.3d 936, 940-941 (7th Cir. 2002).

## CONCLUSION

Based on the foregoing arguments, the court should reject the Magistrate Judge's Report and Recommendation; and upon review of the plaintiff's brief in its entirety *de novo*, grant the relief requested therein.

Respectfully submitted,

INGRAM LAW FIRM, P.C.

By: _____
JOHN J. INGRAM II
State Bar No. 24025447
Federal Bar No. 25468
3016-A N. McColl
McAllen, Texas 78501
Telephone:   (956) 661-0074
Facsimile:    (956) 661-0047

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was mailed to the opposing counsel on ~~December 17, 2004~~ by United States mail and by facsimile.

TASHA STEVENSON, Attorney-in-Charge
Special Assistant U. S. Attorney
Office of the General Counsel, SSA
1301 Young Street, Suite 430
Dallas, Texas 75202
Telephone: (214) 767-4536
Facsimile: (214) 767-9189

15